HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL BRADY, et al.,

        Plaintiffs,

   v.

AUTOZONE STORES, INC., and
AUTOZONERS LLC,

        Defendants.

CASE NO. C13-1862 RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court upon plaintiff Michael Brady's ("Brady") motion for class certification.  Dkt. # 23.  Brady seeks class certification under Federal Rule of Civil Procedure 23.  Defendants AutoZone Store, Inc. and AutoZoners LLC (collectively "AutoZone") oppose the motion.

The parties requested oral argument, but the court finds oral argument unnecessary in light of the parties' extensive submissions and the voluminous evidentiary record.  For the reasons stated herein, the court DENIES Brady's motion.  This order concludes with a deadline for a joint statement on a schedule for trying Brady's individual claims.

## II.  BACKGROUND

Brady alleges that AutoZone illegally deprived class members of statutorily guaranteed meal periods.  Brady seeks to certify the following two classes:

ORDER – 1

Class 1:  All former and current hourly-paid AutoZone store employees who worked more than five hours in a day but did not receive a meal break within five hours of the start of their shifts, for the period of September 25, 2010, to the date of the Class Notice.

Class 2:  All former and current hourly-paid AutoZone store employees who worked more than five hours after the conclusion of a meal break but did not receive a second meal break within five hours after the conclusion of the first meal break, for the period of December 12, 2009, to the date of the Class Notice.

### III.   LEGAL STANDARD

The court's decision to certify a class is discretionary.  *Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 944 (9th Cir. 2009).  Federal Rule of Civil Procedure 23 ("Rule 23") guides the court's exercise of discretion.  A plaintiff "bears the burden of demonstrating that he has met each of the four requirements of Rule 23(a) and at least one of the [three alternative] requirements of Rule 23(b)."  *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 724 (9th Cir. 2007).  Rule 23(a) requires a plaintiff to demonstrate that the proposed class is sufficiently numerous, that it presents common issues of fact or law, that it will be led by one or more class representatives with claims typical of the class, and that the class representative will adequately represent the class.  *Gen. Tel. Co. of the S.W. v. Falcon*, 457 U.S. 147, 161 (1982); Fed. R. Civ. P. 23(a).  If a plaintiff satisfies the Rule 23(a) requirements, he must also show that the proposed class action meets one of the three requirements of Rule 23(b).  *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001).

In considering Rule 23's requirements, the court must engage in a "rigorous analysis," but a "rigorous analysis does not always result in a lengthy explanation or in depth review of the record."  *Chamberlan v. Ford Motor Co.*, 402 F.3d 952, 961 (9th Cir.

ORDER – 2

1    2005) (citing *Falcon*, 457 U.S. 147, 161 (1982)).  The court is neither permitted nor

2    required to conduct a "preliminary inquiry into the merits" of the plaintiff's claims.

3    *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) (citing *Eisen v. Carlisle &*

4    *Jacquelin*, 417 U.S. 156, 177 (1974)); *see also* Fed. R. Civ. P. 23 advisory committee's

5    note (2003) ("[A]n evaluation of the probable outcome on the merits is not properly part

6    of the certification decision"); *but see Wal-Mart Stores, Inc. v. Dukes*, --U.S.--, 131 S. Ct.

7    2541, 2551-52 (2011) (suggesting that Rule 23 analysis may be inextricable from some

8    judgments on the merits in a particular case).  The court may assume the truth of a

9    plaintiff's substantive allegations, but may require more than bare allegations to

10   determine whether a plaintiff has satisfied the requirements of Rule 23.  *See*, *e.g.*,

11   *Blackie*, 524 F.2d at 901, n.17; *Clark v. Watchie*, 513 F.2d 994, 1000 (9th Cir. 1975) ("If

12   the trial judge has made findings as to the provisions of the Rule and their application to

13   the case, his determination of class status should be considered within his discretion.").

14                              **IV.   ANALYSIS**

15            Brady seeks certification under Rule 23(b)(3).  A class may be certified under this

16   subdivision if: (1) common questions of law and fact predominate over questions

17   affecting individual members, and (2) if a class action is superior to other means to

18   adjudicate the controversy.  Fed. R. Civ. P. 23(b)(3).

19            The "predominance" and "superiority" prongs of Rule 23 work together to ensure

20   that certifying a class "would achieve economies of time, effort, and expense, and

21   promote . . . uniformity of decision as to persons similarly situated, without sacrificing

22   procedural fairness or bringing about other undesirable results."  *Amchem Prods., Inc. v.*

23   *Windsor*, 521 U.S. 591, 615 (1997) (internal citation and quotation omitted).  A "central

24   concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common

25   issues will help achieve judicial economy.'"  *Vinole*, at 944 (quoting *Zinser*, 253 F.3d at

26   1189).  Thus, the court must determine whether resolution of common questions would

27

28   ORDER – 3

resolve a "significant aspect" of the class members' claims such that there is "clear justification" for class treatment. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (citations omitted).

Because the court finds the analysis under Rule 23(b)(3) dispositive, it does not address the prerequisites of Rule 23(a).

### A.     Predominance

To meet the predominance requirement, common questions of law and fact must be "a significant aspect of the case…[that] can be resolved for all members of the class in a single adjudication." *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 589 (9th Cir. 2012) (quoting Hanlon, 150 F.3d at 1022). Accordingly, to make this determination, the court must analyze each of the plaintiff's claims separately. *Erica P. John Fund, Inc. v. Halliburton Co.*, --U.S.--, 131 S. Ct. 2179, 2184 (2011) ("Considering whether questions of law or fact common to the class members predominate begins, of course, with the elements of the underlying cause of action.").

Here, Brady is pursuing three claims: (1) violation of Washington Administrative Code 296-162-092 ("WAC meal period provision"), (2) failure to pay wages under RCW 49.46, and (3) willful withholding of wages under RCW 49.52. (Mot.) Dkt. # 23, p. 17. To prove his first claim, Brady must show that AutoZone failed to allow breaks in accordance with the WAC meal period provision. His second and third claims depend upon his ability to prove his first claim -- his second claim (involving RCW 49.46) demands that AutoZone pay class members the wages that they were owed due to AutoZone's alleged violation of the WAC meal period provision; and his third claim (involving RCW 49.52) demands double those damages as a civil penalty. *See* (Am. Compl.) Dkt. # 1-1, ¶¶ 6.6-6.8. Accordingly, to determine whether common questions predominate, the court need only analyze the elements of Brady's first claim.

ORDER – 4

Brady seeks to show violation of the WAC meal period provision (and thereby class-wide liability) in two ways: (1) time-card "punch-in/punch-out" data, which he contends shows a "violation" of the statute each time an employee punched out after the five-hour mark, and (2) a written policy, which he contends violates the statute on its face. The court addresses each of these arguments in turn.

### 1.    The WAC Meal Period Provision

The WAC meal period provision provides, in pertinent part, that:

> (1)    Employees *shall be allowed* a meal period of at least 30 minutes which commences no less than two hours nor more than five hours from the beginning of the shift. Meal periods shall be on the employer's time when the employee is required by the employer to remain on duty on the premises or at a prescribed work site in the interest of the employer.

> (2)    No employee shall *be required* to work more than five consecutive hours without a meal period.

> (3)    Employees working three or more hours longer than a normal work day *shall be allowed* at least one 30-minute meal period prior to or during the overtime period.

WAC 296-126-092 (emphasis added).

### 1.    Evidence of "Violations" Using Time-Card Data

Brady argues that the WAC meal period provision imposes a mandatory obligation on the employer to both (1) provide meal breaks and (2) *to ensure* that employees take meal breaks. (Reply) Dkt. # 49, p. 2. Thus, under Brady's interpretation of the law, it is not enough for an employer to make meal breaks available and to promote a workplace culture that encourages employees to take those breaks; rather, an employer must police its employees and essentially force them to take meal breaks. The policing function proposed by Brady is very specific -- if an employee punches out five hours and one minute after the start of his shift, Brady believes this court should hold the employer

ORDER – 5

strictly liable for that meal break "violation." *Id.*, p. 3.  Brady proposes only one

exception to this hard-line approach: written waivers signed by each employee for each

missed meal break.  (Mot.) Dkt. # 23, pp. 25-27.  Absent such written waivers, Brady

believes that employers should be held liable for each instance in which an employee

fails to punch out within the exact statutory time period.

The court disagrees with Brady's interpretation of the law.  Determining whether

an employer is responsible for (and legally liable for) a missed meal period is more

complicated than what we can decipher from "punch-in/punch-out" data.  The statute

states that employees "shall be allowed" a meal period and no employee shall "be

required" to work more than five consecutive hours without a meal period.  WAC 296-

126-092.  The plain meaning of this language is that employers cannot prohibit

employees from taking meal breaks; they must *allow* employees to take a 30-minute meal

break after five hours of consecutive work.  Nothing in the statute leads the court to

believe that the legislature intended to require employers to police employees who fail to

take a break; rather, employers need only make meal breaks available to employees who

choose to take those breaks.  As explained below, however, this "permission to take a

break" must be meaningful.  A policy that allows for breaks, but in practice incentivizes

employees to skip breaks or allows supervisors to coerce employees into skipping breaks

does not meet the statutory requirements.  Additionally, a policy that on its face, or in

effect, requires employees to stay actively engaged in work during breaks also does not

meet the statutory requirements.  The court's conclusion is supported by precedent and

the interpretive guidance of the Washington Department of Labor & Industries.  *See, e.g.*,

*Eisenhauer v. Rite Aid Corp.*, 2006 WL 1375064, at *2 (W.D. Wash. May 18, 2006)

("WAC 296-126-092 does not require an employee to take a meal break….Thus, there is

no affirmative duty either for the employer to schedule a meal period, or for the employee

to take a lunch break."); *White v. Salvation Army*, 118 Wash. App. 272, 279 (2003) ("The

ORDER – 6

employer cannot prevent an employee from taking their meal period, but there is no affirmative duty on the employer to schedule meal periods for a specific time."); *Meal and Rest Periods for Nonagricultural Workers Age 18 and Over*, Administrative Policy ES.C.6 at 4 (2005) ("Employees may choose to waive the meal period requirements… The department interprets [the statute] to mean that an employer may not require more than five consecutive hours of work and must allow a 30 minute meal period…").[1]

Brady's selective quotes from *Pellino v. Brink's, Inc.*, 164 Wash. App. 668 (2011) do not support his interpretation.  In *Pellino*, armored truck drivers were given specific instructions to remain on guard "at all times when they are out on their routes, including whenever they are using the bathroom, purchasing food, or eating." *Pellino*, 164 Wash. App. at 677.  Additionally, the evidence established that supervisors instructed drivers to "not stop the truck for breaks, but to 'eat on the go.'" *Id.* at 678.  The employer's written policy prohibited drivers from carrying books, magazines, newspapers or personal cell phones and also prohibited employees from engaging in any personal activities, including making personal calls, making purchases, or paying bills.  *Id.* at 674.  The evidence also established that the "aggregate average of the duration of the recorded stops for meal periods and rest breaks each day was 8.3 minutes." *Id.* at 679.  There was an absence in *Pellino* of any significant conflicting testimony from Brink's employees showing that the company policy promoted meaningful break time; rather, the weight of the evidence showed the exact opposite.  *Id.* at 684, 686.

Based upon these facts, the court found that drivers were always "engaged in active work duties" and did not receive any meaningful break "from mental and physical exertion and no opportunity for personal relaxation, activities or choice."  *Id.* at 680. Although the court stated that the WAC meal period provision "imposes a mandatory obligation on the employer," the court did not state that obligation was to police the

---

[1] Policy available at: http://www.lni.wa.gov/WorkplaceRights/files/policies/esc6.pdf

ORDER – 7

1    taking of breaks.  Rather, the "mandatory obligation" is properly read to mean that

2    employers must ensure that employees are given a meaningful *opportunity* to take breaks

3    (*i.e.*, free from coercion by a supervisor to "eat on the go" and free from a culture that

4    encourages skipping breaks) and to ensure that those breaks comply with the statute (*i.e.*,

5    no active work can be performed and the employees must be able to engage in personal

6    activities and rest during these breaks).  *Pellino*, 164 Wash. App. at 693 ("In summary,

7    neither paid rest breaks nor paid meal periods have to be scheduled (although the

8    employer should make some effort to do so)…no active work can be performed, and the

9    employees must be able to engage in personal activities and rest during these breaks.");

10   *see also Freese v. Snohomish Cnty.*, 129 Wash. App. 659, 666 (2005) (finding that an

11   employer cannot "demand unremitting work through the lunch period").

12          Other Washington cases support this view.  In *Brown v. Golden State Foods

13   Corp.*, 186 Wash. App. 1004 (2015), Division 2 recently distinguished *Pellino* based

14   upon the facts noted above and reaffirmed that employers have no duty to police the

15   taking of breaks.  *Brown*, 186 Wash. App. at *10.[2]  Although Justice Bjorgen questioned

16   whether the plaintiff in *Brown* was actually given a meaningful opportunity to take

17   breaks, he aptly observed that courts should look past an employer's written policy to the

18   facts of the particular case to determine if the circumstances (i.e., the demands of work or

19   coercion by a supervisor) resulted in a practice that incentivized skipping breaks.  *Id.* at *

20   12 (Bjorgen, J., concurring in part and dissenting in part).

21          The Washington Supreme Court recently reiterated this point in *Demetrio v.

22   Sakuma Bros. Farms, Inc.*, 355 P.3d 258, 263 (Wash. 2015).  In *Demetrio*, the court

23   stated that employers must "affirmatively promote *meaningful* break time" and noted that

24   in *Pellino* (and other Washington cases) the courts did not establish blanket rules, but

---

[2] Although the court is not bound by unpublished decisions of intermediate state courts, unpublished opinions that are supported by reasoned analysis may be treated as persuasive authority.  *Employers Ins. Of Wausau v. Granite State Ins., Co.*, 330 F.3d 1214, 1220 n.8 (9th Cir. 2003).

ORDER – 8

instead looked to "how rest breaks were used (or not) by the employees *in context*." *Demetrio*, 355 P.3d at 263 (emphasis added). Thus, the Demetrio court held that "[a] workplace culture that encourages employees to skip breaks violates WAC 296-126-092." *Id.*

These cases demonstrate that Brady's interpretation of the law is simply wrong: Washington has not adopted a strict liability approach to the taking of meal breaks. Indeed, the Washington Supreme Court has counseled against the adoption of "blanket rules." *Demetrio*, 355 P.3d at 263. Instead, the statutory language, when read together with the case law, suggests that an employer's obligation is to relieve its employees of all duty, relinquish control over their activities and permit them a reasonable opportunity to take an uninterrupted break. The employer's "affirmative obligation" is to ensure that this opportunity is meaningful and free from coercion or any other impediment. *Compare Eisenhauer*, 2006 WL 1375064, at *2, *Brown*, 186 Wash. App. at *10, and *White*, 118 Wash. App. at 279, *with Demetrio*, 355 P.3d at 263, *Pellino*, 164 Wash. App. at 693, *and Freese*, 129 Wash. App. at 666.

This approach is in line with the California Supreme Court's analysis of a substantially similar meal break statute. California's statute states, in pertinent part: "No employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes..." and "[a]n employer may not employ an employee for a work period of more than ten (10) hours per day without providing the employee with a second meal period of not less than 30 minutes…" *Brinker Restaurant Corp., v. Sup. Ct.*, 53 Cal.4th 1004, 1034-35 (2012). In reviewing this language the court rejected the contention that an employer is obligated to police the taking of breaks. *Id.* at 1040. The court reasoned that such a policy would encourage employees to manipulate the flexibility granted them by employers to use their breaks as they see fit to generate liability (e.g., waiting until the five hour and one minute mark to clock out). *Id.*; *see also*

ORDER – 9

*Brown v. Fed. Express Corp.*, 249 F.R.d. 580, 585 (C.D. Cal. 2008) ("Requiring enforcement of meal breaks would…create perverse incentives, encouraging employees to violate company meal break policy in order to receive extra compensation…."). The court emphasized, however, that an employer may not undermine a formal policy of providing meal breaks by pressuring employees to perform their duties in ways that omit breaks. *Brinker*, 53 Cal.4th at 1040 ("The wage orders and governing statute do not countenance an employer's exerting coercion against the taking of, creating incentives to forgo, or otherwise encouraging the skipping of legally protected breaks.")

This is exactly what happened in *Pellino* – Brink's employees operated in a culture in which supervisors coerced and incentivized them to skip breaks. *Pellino*, 164 Wash. App. at 678. The *Pellino* court held that employers have a "mandatory obligation" to ensure that no such coercion takes place. Although Brady reads *Pellino* to impose a strict requirement to police the taking of breaks, the court finds that reading unjustified and unduly expansive.

In summary, the court finds that under Washington law, employers are not subject to strict liability for failing to police the taking of meal breaks. Rather, an employer's obligation is to relieve its employees of all duty, relinquish control over their activities and permit them a reasonable opportunity to take an uninterrupted break. The employer's "affirmative obligation" is to ensure that this opportunity is meaningful and free from coercion or any other impediment.

(a) <strong>Individual Issues Predominate</strong>

Because AutoZone was required only to ensure that its employees received a meaningful opportunity to take a meal break, Brady and the putative classes can prevail only if they demonstrate that they were deprived of such an opportunity. Any such showing will require substantial individualized fact finding because the court will need to inquire into the reasons for any missed breaks.

ORDER – 10

Brady offers punch records for AutoZone employees showing when potential meal break violations may have occurred.  (Mot.) Dkt. # 23, p. 13 (estimating that 87,770 first meal break violations occurred and 62, 670 second meal break violations).  These records show a "violation" any time an employee clocked out one or two minutes after the five hour mark.[3]  *See* (Fix. Decl.) Dkt. ## 31-33.  The punch records, however, do not explain *why* the employee clocked out after the five-hour mark.  They do not distinguish between meal beaks taken and not punched, meal breaks not taken at the employee's discretion, and meal breaks not taken because AutoZone denied the employee a meaningful opportunity to take the break.  *See Gonzalez v. Officemax N. Am.*, 2012 WL 5473764, at *3-4 (C.D. Cal. Nov. 5, 2012).  Nor has Brady presented any evidence of an unwritten policy or practice of coercion by AutoZone supervisors encouraging or incentivizing employees to skip breaks.  Accordingly, Brady has failed to meet his burden of identifying a common method of proving AutoZone's liability.

Indeed, AutoZone has presented evidence illustrating the predominance of individual issues.  Some employees forget to punch in and out or cannot do so because the system is down.  (Iannucci Decl.) ¶ 11.  One of AutoZone's declarants testified: "The managers typically allow for flexibility if an employee needs an alternative time for their lunch. For example, one time I needed to go to a special meeting at my son's school and my meal period was adjusted so that I could do that."  (Cantrell Decl.) ¶ 4.  Another declarant testified: "One of my employees occasionally takes her lunch after she has been working for five hours. She is a mother with an infant child, and occasionally she needs to take a late lunch to coordinate child care needs."  (Aroche Decl.) ¶¶ 4-5.  The testimony also suggested that employees often waive their meal periods.  One declarant stated: "I sometimes waive my lunch in writing, and I have also done so verbally."

---

[3] Although this type of evidence may have been used in *Pellino* to establish liability, the court noted the *consistency* of the class member testimony regarding the employer's culture of encouraging missed breaks. *Pellino*, 164 Wash. App. at 684.

ORDER – 11

(Cantrell Decl.), ¶ 5.  Another employee stated: "I have waived my meal period on numerous occasions.  When I have done that I typically do so verbally, but I have prepared a written statement before."  (E.Hernandez Decl.) ¶ 6.  Another declarant stated: "If I did work more than five or more hours after the end of my lunch, that was voluntary, as I would rather skip the second lunch and finish the work so I can go home.  I don't want to take a second unpaid meal period, which really just makes my work day longer with no real benefit to me…At one point, AutoZone let me sign a continuing written waiver of this five-hour requirement.  Even before that, I had told them this is what I wanted."  (G. Smith Decl.) ¶¶ 3-5.

Although a written waiver of the meal period requirement is *recommended* by the Washington Department of Labor and Industries, it is not *required*.  The agency's administrative guidance is clear on this point.  See *Meal and Rest Periods for Nonagricultural Workers Age 18 and Over*, Administrative Policy ES.C.6 at 4 (2005) ("Employees may choose to waive the meal period requirements…While it is not required, the department recommends obtaining a written request from the employee(s) who choose to waive the meal period requirement.")

Thus, in light of the evidence presented by AutoZone demonstrating the myriad possible reasons for the late "punch outs" the court cannot infer class wide liability.  The fact that a single meal period was missed (or taken minutes after the five-hour mark) is by no means conclusive proof that it was missed in violation of the statute.  Stated another way, the time-card data alone does not establish that AutoZone failed to provide its employees with a meaningful opportunity to take meal breaks, nor does it establish that AutoZone coerced or incentivized missing breaks.

Accordingly, the court finds that the time-card data is insufficient to demonstrate that common questions of law and fact predominate over individual issues.

ORDER – 12

### 2.     AutoZone's Policy

Brady's second method of proving class-wide liability also fails.  According to Brady, AutoZone's written policy regarding second meal breaks violated the WAC meal period provision on its face.  This policy, according to Brady, is sufficient to show a company-wide practice that prevented employees from having the meaningful opportunity to take a second meal break.  The court disagrees.

Several versions of the policy were in effect during Brady's proposed class period.  Those policies state, in pertinent part:

In effect October 2008 - May 2011:

| An AutoZoner who works more than… | Is provided a(n)… |
|---|---|
| 5 consecutive hours per day | 30 minutes, to be given at a time not less than 2 hours nor more than 5 hours from the beginning of the shift. |
| 11 consecutive hours per day | 60 minutes, to be given before or during the overtime. |

In effect May 2011 - March 2014:

| An AutoZoner who works more than… | Is provided a(n)… |
|---|---|
| 5 consecutive hours per day | meal period of not less than 30 minutes, to be given at a time not less than 2 hours nor more than 5 hours from the beginning of the shift. |
| 11 consecutive hours per day | additional meal period of not less than 30 minutes. |

In effect March 2014 - present:

| An AutoZoner who works more than… | Is provided a(n)… |
|---|---|
| 5 consecutive hours per day | meal period of not less than 30 minutes, to be given at a time not less than 2 hours nor more than 5 hours from the beginning of the shift. |
| 5 consecutive hours after his or her prior meal period ends | meal period of not less than 30 minutes, to be given at a time beginning not more than 5 hours after the end of the prior meal period; and |
| 3 or more hours longer than his or her normal work day | Additional meal period of not less than 30 minutes, to be given at a time beginning not more than 3 hours after the end of his or her normal work day. |

ORDER – 13

(Iannucci Decl.) Dkt. # 46-4, pp. 13-25.

The court finds no issues, nor does plaintiff raise any issues, regarding AutoZone's current policy.  Rather, Brady contends that the first two policies noted above (those in effect from October 2008 to March 2014) violate the WAC meal period provision because they require employees to work 11 consecutive hours before receiving a second 30-minute meal break.  The court disagrees.

The court finds that these policies were poorly written, but they are, at worst, ambiguous.  The first policy noted above can be read to require 11 consecutive hours of work before an employee receives a second meal break of 30 minutes, but it also could be read to allow an employee 90 minutes of total break time.  The second policy noted above is more problematic, but it is also, at worst, ambiguous.  When read together with the first provision, it implies that a person who works 11 hours receives two unpaid meal breaks of 30-minutes each (*i.e.*, 10 hours of work and 1 hour of break time).

Nevertheless, even if AutoZone's policy was facially invalid during some part of the class period, plaintiff has produced no evidence to show that this policy resulted in a uniform practice that violated the WAC meal period provision.  *See Villa v. United Site Servs. of Cal.*, 2012 WL 5503550, at * 8 (N.D. Cal. Nov. 13, 2012) ("The written policy is ambiguous, and explicitly leaves discretion to individual managers.  Thus, the written policy, without more, cannot establish whether and how any given employee was actually given meal breaks.").  AutoZone has presented evidence that store managers had discretion in scheduling meal periods and many allowed employees to take a 60 minute meal period or to take an early or late lunch to make an appointment or attend to some other personal matter.  *See discussion supra*; (Iannucci Decl.) ¶ 10.

Accordingly, the language of the policy alone is insufficient to show class-wide liability.

ORDER – 14

**B.     Superiority**

The Court next considers whether the class is superior to individual suits. *Amchem*, 521 U.S. at 615.  "A class action is the superior method for managing litigation if no realistic alternative exists."  *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996).  This superiority inquiry requires a comparative evaluation of alternative mechanisms of dispute resolution.  *Hanlon*, 150 F.3d at 1023.  Rule 23(b)(3) provides a non-exhaustive list of factors relevant to the superiority analysis that includes "the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3).

This class action would be unmanageable given the predominance of the individual issues necessary to establish AutoZone's liability.  The resources that would be expended on determining the reason for missed breaks would exceed those saved by classwide determination of the number of breaks missed.  The difficulties in managing such a wide-ranging factual inquiry persuade the court that class treatment is not a superior method for resolution of the class members' potential claims.  *See Brown*, 249 F.R.D. at 587.

Accordingly, the Court finds that class treatment is not superior to individual suits as a means to adjudicate this dispute.

**V.   CONCLUSION**

For the reasons stated above, the court DENIES Brady's motion for class certification.  The parties shall meet and confer to discuss a schedule for trying Brady's individual claims.  They shall file a joint statement presenting their views no later than October 30, 2015.

Dated this 30th day of September, 2015.

*Richard A Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 15